The next case is Johnson v. American Towers. Mr. Parker, let me state as you approach to you, Mr. Parker, I rode up with you and your colleague this morning without realizing you were connected with this case at all and we didn't talk about the case. We certainly didn't. It's a pleasure being here with you today for a hearing on what we consider is a very important case. It's not only important to the Johnsons, but I think it's important and becoming more relevant as cell phones are used for illegal purposes in prisons. It's a hot issue. I think everybody would agree that prisoners shouldn't be able to use cell phones to put a hit on somebody. So we understand that that is conduct that should be prohibited and so we have to ask ourselves how can we accomplish the Department of Corrections and petition the FCC for authority to jam the phones and it has not been granted and of course that's not really relevant to what we're talking about here today. I don't think that there's at this stage the facts are that Captain Johnson was charged with the responsibility of confiscating cell phones in the Lee County, the Lee Correctional and that in fact did not suit certain people that had illegal cell phones in the prison and as a result of that an individual who was confined in the prison used a cell phone to call someone to put a hit on Captain Johnson and in fact on March 5th 2010 as he was getting ready to go to work his door was knocked down and he was shot six times by this individual who's now pled guilty. The question of course is is the we've sued the cell tower owners and also the occupiers of the people using it to transmit their signals off of this tower. Now they say the defendants say we can't state a cause of action. I say we do. I have a case on that. We stated a state law claim against the cell tower owners and occupiers for accommodating this illegal activity on their property when they knew it could occur and would occur and was occurring and it did in fact occur in this occasion and Captain Johnson was in fact very you know this is unusual because we didn't in fact a lot of these laws were passed when we didn't even have cell phones but I started thinking about well what's a simple way to put this what we're claiming that they did wrong and I started thinking about back before a few of us here were born back when this happened and they had in the movies you'd go to the movies and I remember very vividly there was a ray gun that you could zap people with I assume now it's probably a laser so suppose that you had someone who had a tower that has a laser magnifier on it and it was illegal to have ray guns in prison but guy got a hold of one and he contacts the person on the tower with the I want to aim this at somebody and shoot them and they do in fact do that Mr. Park I've heard about the old days before I'm glad to actually see somebody who lived through I am and I think you have one of your colleagues that it was probably but they had the movies with me well you're gonna have to say that not me let me ask you this if there is if there is a federal duty not to interfere with signals from the cell phone cell communications if there is a state duty how do you effectuate that state duty in light of the federal obligation in other words simplified federal obligation is nobody interfere with signals from cell phones I don't think that what is what section 333 says he's gonna think that really well let's look at section 333 which was enacted in 1934 well long time before cell phones but what it says is that you cannot maliciously maliciously are intentionally in other words that is doing something by someone other than the cell phone operator and it back then the radio operator I'm talking about the tower correct the tower the tower can can interfere obviously with the signal because they're doing it they're doing it right now with stolen phones they if you got a stolen phone then the tower operators and occupiers ready to operate as I presume they do intercept that signal and interrupt it so it is being done it's being done every day so they can't say they can't do that because they're doing it and they will admit they are doing it because it is reality if you're if you for instance another example of them doing the same thing we're asking them to do if your time is up on the phone then they don't allow you to use the tower and you can't communicate because so they are interfering in that instance so they have the ability to do this and really I think this case it really comes down to me they had the technical ability but you say that doesn't violate the law to do that there's nothing that I can say that they I'll be honest with you it is very hard for me to read their arguments and come up with a common sense interpretation of it and and they say is preempt in the federal law is taken over this area so that we cannot bring this case but clearly we brought a state law case what about the FCC refusing to give South Carolina prison officials or prison officials in South Carolina sure which the right to put those jamming devices you mentioned that sure the FCC denied the state the authority to do that they did not grant it and the president of course the president would be somebody who would be on a fan with the operators and owners of the tower can't interfere with their own signals so they can do it and that is the importance of this case again when you say they can't interfere you mean legally you cannot interfere with your own say correct and I think that's very clear that you had and they are doing it they just won't do it in this case even though there's been a tremendous wave of sure I understood your answer to judge shed just now all right you say they can't interfere with their own signal I'm sorry I'm they can't under section 333 maliciously and intentionally interfere with their own signals which they control shutting down the device not the not the service itself right they're not shutting down back controlling that and stopping an illegal phone call they are not interfering with anybody's legal service and they can't interfere with people's legal service but that doesn't cause them not to interfere with illegal services stop it just like they would with a stolen phone and that is what we're saying that they should have done in this case and there is no federal prohibition from them doing that if you look at it they they say well they that our case is preempted and prohibited by 47 USC 201 201 has absolutely nothing to do with this case 201 says that the operators have to provide service upon a reasonable request in other words you can't discriminate and not provide service to customers now what in the this case I cannot read it now they they only put in that brief section B but if you put a which has to be read with it it has nothing to do with with this case it's about denying a customer's reasonable request for service and somehow our case is preempted by that and I can't see it I mean I guess I'm simple but I can't read it that way and I've read it and read it they say that 47 USC 333 332 preempts us and it the part they say preempts us says that that that you cannot a state cannot a locality cannot pass laws or do anything to affect the entry into the market or the rates now what how does this case have anything to do with entry into the market okay so let me see if I from getting this your theory is that all the illegal cell phones should have been shut off is that it in a nutshell it could is that I just don't get to transmit that signal beyond the nearest tower right that's what I mean so that's so that so the company should have identified the signals coming from the unauthorized devices and stop the signal as soon as it got to the tower not even that they can stop all radio transmissions that come from a specific area such as the prison so they should have shut down the prison no they cell phones are illegal in the prison not only well in everybody no but everybody well I'm not sure that's true well it is you're saying that's true as a matter of South Carolina law I'm saying that's true as far as South Carolina prison policy that they do not allow the policy they do not South Carolina law no not that I'm aware of but they do not allow cell phones even from the workers at the prison no one can use a cell phone they have the ability to keep cell phone signals they can identify that area and they can prevent them from putting and having illegal calls coming from that particular area and that's what they've been asking to do the prisons and what about a person who drives past the prison he wouldn't be affected he is that they have the power to in effect erect a dome over the prison if you want to describe it that I mean yeah I'm just trying to yeah I mean I can say that and draw a circle around that prison and all signals that come from that area are not transmitted beyond the tower is the other side argue they cannot technically do that no we haven't heard that no they don't say that they just don't say it's a matter of law they can't restrict right they saying that it's restricted and their arguments about how it's preempted to me absolutely none of them have any merit well the foreseeability is clear because they were all notified in July of 09 when the prison filed a petition that people were being hurt and they were using the cell phones out of the prisons to target people and to in fact do illegal activities so they were well on notice that it was foreseeable that this was happening because it had been happening and the prison officials knew it had been happening and it was a major problem and that's what captain Johnson's job was was to try to activities could not go forward out of the prison and and that was what he was in fact almost murdered for and so clearly it was foreseeable now I would like to point out to the court the penny case because that's the fourth circuit case that it to me appears to be dead in point with what we're doing here and in that case there were cases brought that said that that because of the radiation emitted by cell phones the cell phone the people selling cell phones and the cell phone company should have in fact equipped them with a headset and we probably know today that that probably was not accurate from the science standpoint but they alleged that people were being injured by the low-frequency radio waves and they brought a case for it that the fourth circuit dealt with every argument they have in this case and said in fact none of these sections that they say in the lower court said preempted this case and there they found that each one of these sections did not in fact preempt anything dealing with that case which was a personal injury case based on strict liability implied warranty misrepresentation and several other things you're reading of section three three three I want to take you back to that you know that no person shall interfere with right how does the tower interfere with how does the tower interfere with they just supply them the metal post well they provide the post but they also as the owner and occupier of the property they have the right to control I'm not saying they wouldn't we have alleged a cause of action against them but and certainly they have the duty and on that is section 364 of the recent which puts the duty on them as a landowner it says a possessor of land is subject to liability others outside of the land for physical harm caused by a structure other artificial how would you effectuate that if the tower owner how could the tower owner do what you wanted the tower owner to do and not fall within no person shall interfere with the radio communications well the tower owner he has control of it because he can tell he can tell the the operator that if you're gonna allow these illegal calls to come in by which people are getting hurt then I'm gonna terminate my lease with you well didn't that interfere with communications no it doesn't if not not with it and it feels with an illegal call yeah but that call is a call no it the operator on affairs with the call he said he he takes the step to say if you're gonna be on my tower you cannot allow these illegal calls that are hurting people to come through here and we feel that that is absolutely within their power to do that you have five minute your time is run on your first presentation you have five minutes you want to reserve that I do okay thank you very much mr. and strike am I saying your name right okay well you know we here we'd like to get it exactly right so what do you want me to it's angst ratio angst ratio okay so thank you your honor I'm Scott angst ratio I represent the Verizon wireless defendants but I'm here presenting argument on behalf of all defendants I'm splitting my time with mr. Jeremy Hodges who represents farmers telephone but I we both can answer any questions you might have your honors it was a heinous crime the shooting of mr. Johnson in the survival of bonafide miracle but the people responsible for that crime of people who shot him we conspired to do so not as judge curry help people who operate wireless telephone networks or people who own structures to which antennas are attached the case was properly removed and the claim was properly dismissed one problem you have is aside from the legal issues to be decided it just doesn't seem to make common sense that cell phone operators companies support prisoners having cell phones to then set up and do dastardly deeds it's just commonsensical it may be legal that you can do it but it just isn't commonsensical do you think the question isn't whether it's it's common sense let me say this that was that was a question I asked you you said it's not the question that was my question your honor it's a question of federal law the FCC I know that I'm just asking you have to stop talk let me tell you how this goes when I start talking you have to stop that's how we gonna proceed you know that I know you just that you know passionate about your advocacy but I'm just saying do you agree with me that this looks like it runs afoul of common sense not any legal issue but just common sense that we all shouldn't be taking whatever steps necessary to prevent communications coming from convicts to do what they want to help them do what they want to outside the prison wall okay but as I'm saying it's the FCC which has a pending rulemaking to figure out the way to do this insistent with Congress's allocation of responsibility over wireless services which is exclusively federal and doesn't give room for the states to come up with their own ways of doing it now specifically on the removal question we have farmers telephone which is you your honor noted owns a structure farmers telephone does not operate a wireless network the antennas that my client and the other wireless carriers attached to those in radio waves the only way for farmers to stop or any tower to stop those radio waves from going where radio waves want to go within their geographical limits would be to emit their own radio waves that counteract and block those who decides where the tower goes physically states have zoning authority under section 332 c7 it's no no no I mean if it's permitted though where he who decides where within that properly zoned area does the tower go as I understand it the tower owner picks the place they want to put up a tower acquires either the property that is why couldn't a tower owner look to put a tower in a spot where the signal wouldn't be strong enough to get to the prison well your honor the way cell phone networks work these cells are hexagonal in shape the tower sits in the middle of them in their line of sight though in that line of sight reception from the it's not it's not your honor these but but anyway but any itself on signals inside buildings yeah no that's not what I mean that means from the point to where the phone is you can you could draw a line not that you look through walls after a gun that's Superman what x-rays are that literally needs a clear unobstructed path by any kind of strut there but every time every kind of wireless communications has some limit doesn't it it does do but your honor this prison no I'm asking why couldn't you I'm just asking can you control how far the signal goes and where it reaches in that a function and part of the location of the tower it's in part a function of location tap it's also part of function of location the prison this prison is next to an interstate highway that non-prisoners drive on it sits in between two other state highways non-prisoners drive on it's a mile and a half from a high school and a junior high school where students are allowed to answer cell phones if you see my question is couldn't you control it you can't I know you don't want to run a file of the FCC's anti-jamming provision but short of that what could you have done to prevent this short of that your honor the way and you see this in the FCC's rulemaking the way this is done is by the prison there are systems where there in fact there are these out there that sell these systems they install antennas in the prison they get sub leases from the wireless carriers which allow them to use the same radio spectrum the wireless carry does those antennas are strong enough to capture any cell phone calls coming into or out of the prison and then they check them against a whitelist that the prison provides one of the Baltimore prisons just installed that system recently and the FCC is working to make it even easier for prisons to do that but these are not interfering with radio communications because your honor interference and I'd point you to paragraph 18 of the notice of course we're making interference is when you use radio signals to disrupt the actual transmission of the radio waves through the air the radio waves in these managed access systems travel through the air unimpeded it's the intelligence in the system that says just like again if you don't pay your bill the wireless company isn't gonna complete your call your phone the radio is between your phone in the tower work perfectly fine nothing interferes with that at all but the network the physical wired network refuses to transmit your texts or your phone calls or your internet traffic beyond a certain point so it doesn't go through if we were to erect a dome around the prison that prevented the signals coming out of the cell phones from getting any but I don't stand it but it doesn't have to interfere with the radio signal from a cell phone if the cell phone is not going to be because not gonna be completed absent interference with the radio signal how can it other than be completed we are so the way once the phone talks to the tower they transfer our signals back and forth the tower that has a fiber optic cable nowadays coming out of it it goes back to a switching center where all the intelligence in the network lives and at that so you can interfere with it in the fiber-optic cable you're not interfering with the signals at that were you interfering with the call absolutely and 333 that's what I'm saying that's not what 333 talks I know but you have a tendency to answer what you want to ask and not not what you want to answer not what I'm asking so I'm trying to answer I'm trying to understand your argument the point is you you say you can't interfere with the cell phone call basically as long as that call signal is underground and not in the air yes okay because 333 talks about interfering with radio waves and through as the FCC is interpreted the deployment of jamming devices that emit their own radio waves and those are per se illegally nice that you're not allowed to sell them market them buy them use them right but cell phone companies are allowed to manage their networks I want to take you back to a question on some other point and let you come back I didn't finish the question before you said no but are you telling me that it's physically impossible by location of towers to prevent service from being provided to a location you're not saying that oh you're not saying that you just you said that to me because you answer the question too quickly but the state highways and stuff the point is you don't want to limit the service and you don't think you need to limit the service you could create dead zones right why was licenses covered broad geographic let me the reason I asked that it I didn't know maybe under license you're obligated to fill a certain area I don't feel a certain portion of the area yes I suppose depending I mean there's 25 prisons that South Carolina runs I don't know how much but the problem your honor is you can't create a dead zone that hues to the specific dimensions of the prison you'd have to create a dead zone that in this case would encompass lots of permissible places where people completely that wouldn't be but that wouldn't be any violation of the law to create that dead zone that would just be a customer relations issue well if it was a mandated by state law it would be and that's 332 c3 a which says that states do not have the power to impose obligations and duties on the conditions of entry this is just like the Bastien case Bastien argued that AT&T before providing service or in order to provide service had to have more antennas so your answer is the cell towers and cell companies could do it technically if they wanted to but they wouldn't have to do it if the state told them to that's what you said create dead zones that encompass prisons and lots of other areas around the prisons and maybe the FCC will decide to limit wireless licenses in that way it has not and states are prohibited by Congress from doing that if you can do it why wouldn't that at least create at least a glimmer of a state duty to do that because your honor a state duty to do it would be expressly preempted by section 332 c3 a so you just it's just preemption it's preemption and there's no case that's ever been I mean there's no South Carolina case that's recognized the duty to alter that the manner in which I mean if I own a coffee shop that I know suspicious people or even better I wouldn't wait I wouldn't wave that red flag mr. Parker sitting over there he may go get you okay soon on that point I don't own a coffee shop yeah but I mean to your legal point my leaf was if I owned a strip mall and it was a coffee shop I leased space to a coffee shop and criminals happen to congregate in that coffee shop the notion that the owner of the strip mall would be liable because it's less see didn't take actions to break up the conversations because those kind of criminal activity mr. Parker cites no South Carolina case or from any jurisdiction that identifies such a duty you draw a distinction between the tower owner and the cell phone companies for purposes of fraudulent jointer I think yes there's a distinction and that is because why because as judge curry recognized for the question of is there a state law of duty the tower owners are even one step further removed the tower owners don't operate wireless networks they just own inner structures yes they allow people but you know building owners allow is the location of the tower move the location of the tower to create a dead zone in your opinion would that be interfering with the radio waves no it would cover there are other provisions of law that would create those problems so when Congress preserved state authority over zoning and I know we didn't brief this because this notion didn't come up it's 332 c7 I've heard us at a number of them you're not allowed states are not allowed to prohibit wireless service in an area and I would think if the state were to use its zoning authority to create dead so they can prohibit location of towers though right but if they were to prohibit location of towers for the purpose of creating a dead zone where no service existed I think that would fall within the bar on prohibiting service well let's assume mr. Parker can get us by the the preemption argument talk of he seemed pretty confident about the ability issue your honor there is no South Carolina case that applies the foreseeability notion in a case like this we cited out-of-state cases where people tried to hold cell phone companies not power owners but cell phone companies liable for texting while driving and injuries caused in texting while driving and those cases uniformly reject the notion that foreseeability reaches that far but the South Carolina Supreme Court often relies on the restatement of tort but hasn't relied on this one and this provision in particular doesn't apply here restatement section 364 says if I build a structure and it falls over and hit somebody then I'm liable all of the examples in restatement 364 are about my structure I have I slant my roof and it injures you I'm liable none of them are about I've leased property to somebody who establishes a service that's used large distances from my property and nothing having to do with my physical structure itself causes the injury right the towers are not causing the injury they're not alleged to cause the injury the towers are simply inert structures if the tower fell on mr. South Carolina law but that's not what happened here it's not what is alleged have here and given mr. Parker's discussion let's focus on specifically what's alleged that defendants have the ability to prevent cell phone signals from being emitted to and from the confines of the prison mr. Parker doesn't want that complaint to be about jamming but the only way you can prohibit or you can prevent cell phone signals from being emitted right they come out of the handsets out of the prison or into is to establish other radio waves that block or jam those you don't have the technology to change the range of waves coming from your broadcast site is this is that not possible you can raise and lower the power is the problem your honor is that it's a at night signals travel further than they do in the day whether changes the what I'm asking about whether or that a power I'm asking that I'm just asking they're not technology that you can limit your broadcast limit where your waves the strength of your waves or though the ray that the frequency on which it operates is that not possible it may not net the desired effect but is that not technically possible as I said it's possible for wireless carriers to decide to craft what would be dead zones in there whether by antenna placement or the problem with that is I think for this purpose of this case at least twofold perhaps I'll come up with a third as I'm talking one that's not something the tower owners can do and as Judge Curry correctly held if the tower owners were to actually admit their own radio waves that blocked our back condition the lease if they would get to the lease as Judge Curry held citing the Clarkstown case from the Second Circuit imposing such requirements based on state statute regulation or verdict of a jury applying common law would be subject to implied preemption because of Congress's overall federal control over the technical and operational aspects of wireless networks so that wouldn't help them either so the tower owners can't do it as far as the wireless carriers go though any state obligation to create those dead zones would constitute a barrier to entry and the final problem of course is that these dead zones can't be confined to the confines of a prison what you're talking about is creating dead zones under section 333 yes do you read no person no person shall interfere is that no person include the actual cell company itself absolutely because they can willfully interfere by operating their own jam I don't know why they do it but the other problem with interfering is of course the jamming device itself is illegal wireless carriers can't buy them any more than you are I put that but wait but wait wait wait but if they could limit their signal some other way other than jamming they could do it that's not interfering interference is interference is the emission of a conflicting signal so that the two signals but into each other and so that so in your position is that they had some technology by which they could limit other than jamming then they wouldn't violate the statute to do it not that provision but a state law duty that would require the creation of dead zones within a federally licensed service territory would run out of section 332 c3a it's exactly the I mean this is the flip side of the bastion case bastion wants more antennas mr. Parker wants fewer antennas those decisions are federal in nature and they're not for the states we ask for the judgment to be affirmed did mr. Johnson get workers compensation benefits you don't know I have heard that he did but I don't know for a fact one way or the other thank you very much thank you mr. Hodges my name is Jeremy Hodges and I represent farmers telephone cooperative I'm here today on behalf of farmers and the tower owner defendants I don't have any points to make that mr. angstrich thank you very much any cover so I won't belabor them or repeat them but I will be gladly answer any questions that you have that relate to the tower owners why can't you why can't you move the tower in a way that the signal won't reach won't reach the prison you could but why didn't you the problem is you would it would not reach other areas outside of the prison where is lawful to use a cell phone yeah but do you have an obligation that you have to put a tower up do you have an obligation to give maximum service no the tower was placed in this area to survive 20 because it's close but I understand but you the owners of the tower you could have decided at a public spirit in this or whatever we don't care what you say cell company we're gonna put our tower in a position it might cause a little problem with people from out of state right now in the state 20 but we are not going to put our tower with public interest folks and we're not going to put our tower in a position to broadcast a signal that can be used by you could do that couldn't you could but you would also create dead zones in areas outside the prison and in a rural area such as Lee County that we're talking about maybe that's that's not a big deal but what about the prison that's located in downtown Columbia you wouldn't want to be in a dead zone if you had a car wreck on I-20 doing 75 miles per hour needed to call the state police that's correct or maybe your child's a student at the elementary school nearby and there's a security situation there you wouldn't want the be able to use their cell phone to know that there's an emergency lockdown and problem at the school you wouldn't want to deny lawful useful beneficial service to people who happen to be located in the vicinity of a prison I didn't suggest that you would I just suggest that you could and in the balance do you struck a balance I take it you would say between providing service to folks who might need it and those who don't need it and how do you make those two ends meet I agree with that it could be done it that but that would be the only way that a tower owner could accomplish that would be the location because the towers themselves are in or as mr. Hanks which said they don't emit or receive any signals they're just simply tall structures that provide the height that the service providers are looking for in order to create a wireless network most of these cell phones get into prisons through correctional officers I would suspect that's the case I think there was a news article that may have made it into the record that recounted an event where they were thrown over the wall and retrieved by prisoners in the yard so I imagine that they get in I can believe that because I've often wanted to throw cell phones over the wall but we've actually had cases recently where people visitors sneak them in and body cavities but I do I do think I think probably the record indicate that most do get in through correctional officers I wouldn't dispute that your honor and I wouldn't dispute that if I was a prisoner I wouldn't think the cell phone was a valuable you know tool to have to try and stay in touch with my family but they're impressive thank you very much thank you appreciate mr. Parker insofar as the preemption in this case there's a presumption that spring going it says is a presumption against preemption and preemption should be clear and I will promise you that any of their arguments about this being preempted or anything but clear that Congress intended to take away this area from the states of protecting people from illegal activity which is what they want to say and my understanding is it's not any of the app there's nothing in evidence and before the court that says they can't technically do this and I believe they can and they do it through a system called managed access system that they can install that allows them to manage these calls coming out of the prison and confined calls from the area of the prison that's my understanding but we're not there in this case because at the moment what we have before the that Captain Johnson has a right to recover under it and I misstated something I want to correct and that is that that there is a regulation that mr. Barnes called my attention when I sat down that prohibits the makes contraband the cell phones for inmates and prison staff and there's a South have the technical ability to do this and I can't understand the argument that somehow not allowing calls from the prison which is illegal somehow interferes with cell phones companies entry into the market the market for illegal telephone calls I mean to me that's ludicrous that there's a market they're saying the market we on a fan with is the market for illegal cell phone calls coming out of that prison now how could that be right I just can't interpret that section in that way and in the penny case is it a federal statute it is a federal statute possible if Congress intended to make a market of illegal cell phone cops then things have gone beyond where I think they are you but in any market of users of interstate highways and schools and it is my understanding they do not have to interfere with that it's not in the record one way or the other I think some of the information in the record deals with the managed access and that they do have this capability of doing it and they've been asked over and over to do it because of this not only there's been several incidents like Captain Johnson but it's well known that in the prison environment that prisoners are conducting absolutely conducting illegal harmful terrible deeds that originate inside prisons over cell phones it's a serious problem but what we have before the court is mr. Johnson's case where we state a state law cause of action we don't rely on any federal cause of action or any federal violation of any federal statutes it's simply a negligence cause of action which we established the elements of and we plead the elements of and that's what's before the court was he awarded workers company he was he was and of course he's had a very career-ending injury and huge medical expenses as a result of what has occurred to him and it ended his career and Captain Johnson thankfully is really become a going around the country speaking on the need to stop the cell phone use in prison because that has become his cause and I think a very worthy one thank you thank you very much we will let the clerk adjourn the court and then we'll step down to greet the adjourned until tomorrow morning at 830 God save the United States and this honorable court
judges: Dennis W. Shedd, Henry F. Floyd, Andre M. Davis